IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

JOSEPH E. HARRISON,
　　　Plaintiff,

v.

WEXFORD HEALTH SOURCES,
INC., *et al.*,
　　　Defendants.

Case No. 2:25-cv-02188-JEH

**Merit Review Order**

Plaintiff, proceeding *pro se*, filed a Complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights at Lawrence Correctional Center ("Lawrence") and Danville Correctional Center ("Danville"). (Doc. 1). This case is before the Court for a merit review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A. The Court must "screen" Plaintiff's Complaint and dismiss any legally insufficient claim or the entire action if warranted. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in the Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

1

**I**

Plaintiff files suit against Wexford Health Sources, Inc., Carissa Luking (Nurse Practitioner at Lawrence), Lorie Cunningham (Healthcare Unit Administrator at Lawrence), Dr. Jonathan Ek (Medical Director at Danville), Felicia Adkins (Warden at Danville), Darcy Henchman (Healthcare Unit Administrator at Danville), Ashley Denur (Director of Nurses at Danville), the Illinois Department of Corrections, Jane Moskus (Transfer Coordinator), and John/Jane Does 1-12 (Nurses at Lawrence and Danville).

Plaintiff alleges he injured his right knee playing basketball at Lawrence on September 15, 2023. Plaintiff was transported to the Healthcare Unit ("HCU") and examined by Defendant Nurse Practitioner Luking, who noticed his knee was swollen and bulging on the right side due to fluid build-up. Defendant Luking informed Plaintiff that he could have a torn ligament or tendon, referred him for an MRI, and gave him crutches and an ice permit. Nurse Brown wrapped Plaintiff's knee.

On October 10, 2023, Plaintiff underwent an MRI at Carle Richmond Hospital in Olney, Illinois. During a follow-up appointment with Defendant Luking on October 12, 2023, she informed Plaintiff the MRI revealed numerous issues, including cartilage and ligament tears, chondromalacia, and a cyst. Defendant Luking referred Plaintiff to an orthopedic specialist.

During an appointment with Defendant Luking on October 24, 2023, she informed Plaintiff he would be transferred to Danville the next day. Plaintiff asked Defendant Luking if his transfer would delay his referral to an orthopedic specialist and appointments with his rheumatologist, urologist, and GI specialist. Defendant Luking allegedly stated there would be no delays. Plaintiff was transferred to Danville on October 25, 2023.

Plaintiff alleges Defendant Cunningham, the Healthcare Unit Administrator ("HCUA") at Lawrence, was responsible for ensuring follow-up appointments, referrals, scheduled procedures, and medical holds were in place. Plaintiff alleges Defendant Cunningham "chose to disregard her job duties by not stopping [his] transfer to Danville." *Id.* Plaintiff alleges that Defendants Luking, Cunningham, Wexford, and IDOC ignored policies and procedures by transferring him even though he was on a medical hold. Plaintiff alleges the transfer delayed medical treatment for his knee injury and his other medical conditions, including ankylosing spondylitis, scleritis, chronic GERD, and irritable bowel syndrome.

On November 1, 2023, Plaintiff saw Defendant Dr. Ek, the Medical Director at Danville. Plaintiff inquired about his medical appointments and the referral to an orthopedic specialist. Defendant Ek allegedly told Plaintiff he would check on the referral. Defendant Ek issued Plaintiff a cane, knee sleeve, and low gallery and bottom bunk permits.

On December 5 and 20, 2023, Plaintiff submitted grievances regarding his right knee injury. Defendant Warden Adkins deemed them emergencies.

On January 11, 2024, Plaintiff sent a request slip to Defendant Denur, the Director of Nurses at Danville, stating that he had not seen his rheumatologist, GI specialist, urologist, or an orthopedic specialist for his right knee. Defendant Denur did not respond. Plaintiff sent another request slip to Defendant Denur asking if an appointment with an orthopedic specialist had been scheduled. Four days later, Defendant Denur responded, "Rheumatology scheduled. I have auths. for GI [and] urology and removal of a nail plate. These would be scheduled. Don't see anything for orthopedic surgery." *Id.* at p. 18. After receiving Defendant Denur's response, Plaintiff filed another grievance regarding his knee injury. Defendant Adkins deemed his grievance an emergency on February 6, 2024.

3

On February 8, 2024, Plaintiff was examined by Dr. Rasheed, a rheumatologist at Carle Clinic in Champaign, Illinois, to address his ankylosing spondylitis. Plaintiff informed Dr. Rasheed that he requested to see an orthopedic specialist about his right knee injury.

During a follow-up appointment with Defendant Ek on March 5, 2024, Defendant Ek informed Plaintiff that he would submit a referral request for Plaintiff to see an orthopedic specialist, as requested by Dr. Rasheed.

On March 28, 2024, Plaintiff was called to the HCU to see Defendant Ek for a follow-up visit after seeing a GI specialist. Plaintiff inquired about the status of his referral to an orthopedic specialist. Defendant Ek informed Plaintiff that he would not refer him to an orthopedic specialist because Plaintiff only needed to see an orthopedic specialist if he needed surgery. Plaintiff responded that he needed to see an orthopedic specialist to determine if surgery necessary.

Plaintiff alleges Defendant Ek followed Wexford's policy and/or procedure that states: "Consideration in deciding treatment is given to wheather [sic] or not the Department of Corrections has the responsibility to provide a treatment. The mere existence of a condition DOES NOT CONSTITUTE A RESPONSIBILITY for repair!" *Id.* at p. 21 (emphasis in original). Plaintiff alleges Defendant Wexford's policy delayed medical treatment for his knee injury.

Plaintiff sent another request slip to Defendant Denur asking for an appointment with an orthopedic specialist. On April 16, 2024, Defendant Denur responded, "I do not have a referral for orthopedics." *Id.* Plaintiff submitted another grievance on April 11, 2024. Defendant Adkins determined his grievance was an emergency on April 16, 2024.

On August 8, 2024, Plaintiff saw Dr. Rasheed regarding his ankylosing spondylitis. Dr. Rasheed told Plaintiff he would recommend seeing an orthopedic specialist regarding whether surgery was needed to correct his knee injury.

On August 29, 2024, Plaintiff sent a request to the HCU explaining that his right knee still hurt. On September 8, 2024, Plaintiff saw Nurse A. Beasley in the sick call line and complained that his right knee still hurt, felt stiff, and popped when he turned it. Nurse Beasley submitted a request for Plaintiff to see Defendant Ek. On December 9, 2024, Plaintiff saw Defendant Ek and informed him that his right knee "gave out" a few days ago and that he was still in pain. Defendant Ek referred Plaintiff for an x-ray, which Plaintiff claimed was ineffective because an x-ray would not show tissue damage or tears.

Even though Defendant Adkins had deemed his grievances emergencies, Plaintiff alleges he did not receive a response from Grievance Officer Andrew Smart and Defendant HCUA Henchman until September 18, 2024. Plaintiff alleges that the IDOC's grievance policy requires prison administrators to respond to emergency grievances within two months. In her response to Plaintiff's grievances, Defendant Henchman stated: "...Harrison has been sent to Rheumatology. A referral to orthopedics has not been sent. If the individual in custody is still experiencing knee pain, it is advised to sign up for nurse sick call." *Id.* at p. 15. On September 23, 2024, Defendant Adkins concurred with the recommendation to deny his grievances. Plaintiff submitted an appeal to the Administrative Review Board ("ARB") on October 9, 2024.

On December 30, 2024, Plaintiff sent another request slip to Defendant HCUA Henchman complaining that he was still experiencing right knee pain. He also stated that Defendant Luking and Dr. Rasheed recommended a referral to an orthopedic specialist.

On February 11, 2025, Plaintiff saw Dr. Rasheed regarding his ankylosing spondylitis. Dr. Rasheed inquired about his knee and noted that Plaintiff's knee still hurt. On February 17, 2025, Plaintiff had a follow-up appointment with

Defendant Ek. Plaintiff states he tried to tell Defendant Ek that his right knee still hurt, but Defendant Ek allegedly ignored him and sent him back to cell.

## II

It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). A claim of deliberate indifference contains both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Id*. An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes*, 546 F.3d at 522. To satisfy the subjective component, the inmate must demonstrate that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. The official must know of and disregard an excessive risk to the inmate's health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The prisoner must show that the defendant engaged in more than negligence and that the defendant's conduct approached intentional wrongdoing or criminal recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 837).

"Within the universe of deliberate indifference cases is a narrower category where a prisoner alleges not that his condition was ignored entirely, but that he received constitutionally deficient treatment for the condition." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019). "[T]hese cases are better framed 'not [as] deliberate indifference to a serious medical need,' but as a challenge to 'a deliberate decision by a doctor to treat a medical need in a particular manner.'" *Id*. (citing *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)). In such cases, courts defer

to a medical professional's treatment decisions "unless 'no minimally competent professional would have so responded under those circumstances.'" *Pyles*, 771 F.3d at 409 (quoting *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008)). A disagreement between the prisoner and his medical provider "about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles*, 771 F.3d at 409 (citing *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006)).

Plaintiff's allegation that Defendants Nurse Practitioner Luking and HCUA Cunningham acted with deliberate indifference to his medical needs by not stopping his transfer to Danville is insufficient to allege an Eighth Amendment violation, absent allegations that medical officials had any control over the transfer itself or that they knew of the risk that his recommended referral to an orthopedic specialist would be interrupted by a transfer to another facility. *See Baisi v. Burke*, 359 F. Supp. 3d 592, 596 (N.D. Ill. 2019). There is no basis for inferring that Defendants Luking and Cunningham had any control over the transfer, knew his treatment would be delayed, or acted with deliberate indifference to his serious medical needs. In fact, Plaintiff states that Defendant Luking examined him shortly after his injury occurred, referred him for an MRI, gave him crutches and an ice permit, and had a nurse wrap his knee. Therefore, Defendants Luking and Cunningham are dismissed without prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and § 1915A.

Plaintiff alleges Defendant IDOC was deliberately indifferent to his serious medical needs by transferring him to Danville when he was on a medical hold. The Eleventh Amendment bars Plaintiff's claim for damages against the IDOC, as the IDOC is not a "person" amenable to suit under § 1983. *See Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001); *Veal v. Illinois Dep't of Corr.*, No. 18-CV-0621-MJR,

2018 WL 3009265, at *2 (S.D. Ill. June 15, 2018). Therefore, Defendant IDOC is dismissed with prejudice.

Plaintiff alleges Defendant Dr. Ek, the Medical Director at Danville, was deliberately indifferent to his knee injury and pain and failed to refer him to an orthopedic specialist. On November 1, 2023, Plaintiff allegedly informed Defendant Ek about his right knee injury and Defendant Luking's referral request. Additionally, Plaintiff alleges Dr. Rasheed recommended that Plaintiff be referred to an orthopedic specialist to determine if surgery was needed. Plaintiff also alleges he frequently complained about knee pain. Nevertheless, Defendant Ek allegedly refused to refer him to an orthopedic specialist. The Court finds that Plaintiff's allegations are sufficient to proceed on an Eighth Amendment deliberate indifference claim against Defendant Ek.

Plaintiff alleges his treatment was delayed due to Defendant Wexford's unconstitutional policy and/or procedure. Private corporations, such as Wexford, have potential liability if they perform a governmental function and, in doing so, injure plaintiff through an unconstitutional policy or practice. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-92 (1978); *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982). Since there is no *respondeat superior* liability under § 1983, Wexford cannot be liable for the alleged misdeeds of Defendant Ek, as employees are responsible individually. *Lewis v. City of Chicago,* 496 F.3d 645, 656 (7th Cir. 2007). However, Defendant Wexford has potential liability if it had an unconstitutional policy, practice, or custom which caused the constitutional deprivation. *Salcedo-Vazquez v. Nwaobasi*, No. 13- 606, 2015 WL 7177231, at *7 (S.D. Ill. Nov. 16, 2015) (citing *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1024 (2015)). "Liability may be based on (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express policy, is so permanent

and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policy making authority." *Taylor v. Wexford Health Sources, Inc.*, No.15-5190, 2016 WL 3227310, at *4 (N.D. Ill. June 13, 2016) (citing *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000)).

Here, Plaintiff asserts Defendant Wexford had an express policy that stated: "Consideration in deciding treatment is given to wheather [sic] or not the Department of Corrections has the responsibility to provide a treatment. The mere existence of a condition DOES NOT CONSTITUTE A RESPONSIBILITY for repair!" (Doc. 1 at p. 21) (emphasis in original). Plaintiff cannot prevail on such a claim unless he is able to establish that the policy was applied in such a way as to cause him injury. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 651 (7th Cir. 2021); *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Plaintiff alleges that Defendant Wexford's policy delayed the medical treatment for his knee injury and his referral to an orthopedic specialist. Based on his allegations, the Court finds that Plaintiff has stated a plausible *Monell* claim against Defendant Wexford for deliberate indifference to his right knee injury.

Plaintiff alleges he sent Defendant Denur, the Director of Nurses at Danville, multiple request slips for medical care for his knee injury and a referral to an orthopedic specialist. Despite her knowledge of his condition and need for care, she allegedly disregarded his requests. The Court finds that Plaintiff has stated a plausible Eighth Amendment deliberate indifference claim against Defendant Denur.

Plaintiff also filed numerous grievances regarding the lack of medical care for his knee injury. Defendant Warden Adkins deemed his grievances as emergencies; however, Defendant HCUA Henchman failed to respond to his emergency grievances for several months, in violation of IDOC policy requiring a

9

response to emergency grievances within two months. Defendant Henchman allegedly denied his emergency grievances on September 18, 2024, and failed to ensure he received appropriate medical treatment for his knee injury. The Court finds that Plaintiff has sufficiently alleged that Defendant Henchman was deliberately indifferent to his knee injury in violation of the Eighth Amendment.

Plaintiff alleges Defendant Warden Adkins concurred with the recommendation to deny his grievances, even though Plaintiff had not been referred to an orthopedic specialist as recommended and continued to experience knee pain. Despite her knowledge of the lack of medical care for his knee injury, Defendant Adkins allegedly failed take action. Plaintiff's allegations raise a plausible inference that Defendant Adkins knew about, yet turned a blind eye to, Plaintiff's knee injury in violation of the Eighth Amendment. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.") (quotations omitted). Plaintiff may proceed on an Eighth Amendment deliberate indifference claim against Defendant Adkins.

Plaintiff also names Jane Moskus and John/Jane Does 1-12 as Defendants, but he did not include any specific allegations about them in his Complaint. Therefore, these Defendants are dismissed without prejudice.

**IT IS THEREFORE ORDERED:**

**1)** **According to the Court's Merit Review of Plaintiff's Complaint under 28 U.S.C. § 1915A, this case shall proceed on an Eighth Amendment claim against Defendants Jonathan Ek, Wexford Health Sources, Inc., Ashley Denur, Darcy Henchman, and Felicia Adkins based on their alleged deliberate indifference to his right knee injury and the failure to refer him to an orthopedic specialist. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.**

2)     Defendants Carissa Luking, Lorie Cunningham, Jane Moskus, and John/Jane Does 1-12 are DISMISSED WITHOUT PREJUDICE for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and § 1915A. The Clerk is directed to TERMINATE these Defendants.

3)     This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

4)     The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

5)     Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.

6)     If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of Defendants' forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

7)     This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will

11

automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

8)     Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the deposition.

9)     Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

10)     Plaintiff shall be provided a copy of all pertinent medical records upon request.

11)     Within 10 days of receiving from defense counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to defense counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

12)     The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

*It is so ordered.*

Entered: July 29, 2025

s/Jonathan E. Hawley
U.S. District Judge